**Richard J. WEISS, Stephen Solender, Arthur Michael Solender, and Elsie Solender, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A. 00–12549–WGY.**

United States District Court, D. Massachusetts.

June 26, 2001.

William R. Bronner, Ossininng, NY, Bruce J. Chasan, Law Offices of Robert A. Stutman, P.C., Ft. Washington, PA, Michael J. Cronin, Colts Neck, NJ, Jeffrey A. Dretler, Boston, MA, Richard D. Glovsky, Boston, MA, Robert A. Stutman, Law Offices of Robert A. Stutman, P.C., Ft. Washington, PA, for Plaintiff.

Albin Drost, Acting Solicitor, U.S. Patent & Trademark Office, Arlington, VA, Cameron Elliot, Dept. of Justice, Commercial Lit. Branch Civ. Div., Washington, DC, William Henabray, Air Force Legal Services Agency, Arlington, VA, Janet Reno, Atty. Gen. of U.S., U.S. Dept. of Justice, Washington, DC, Barbara Healy Smith, U.S. Attorney's Office, Boston, MA, Donald K. Stern, U.S. Attorney's Office, Boston, MA, for defendant.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The United States twice ordered an inventor to keep his invention secret for reasons of national security. After the

secrecy order was lifted, and his invention patented, the inventor brought the United States to this Court, pursuant to the Invention Secrecy Act, 35 U.S.C. §§ 181–188, seeking compensation for imposition of the secrecy order. Presently before the Court are the parties' cross-motions for summary judgment.[1]

## I. BACKGROUND

### A. Undisputed Facts

One of the plaintiffs, Richard J. Weiss, invented "smart wing skins," which can provide real-time information about the forces on an airplane wing without impeding the normal use of the wing. Compl. Ex. A (U.S. Patent No. 5,609,952 [issued Mar. 11, 1997]); *see also id.* Ex. D at 1. "Smart wing skins" rely on a bundle of fiber optics that transmit light. The bundle of fiber optics is integrated into the structure of a wing. The image produced by the light serves as a measure of the various forces on the fiber optics, and thus on the wing itself.

Mr. Weiss assigned half his ownership interest in his invention to the other three plaintiffs, Stephen Solender, Arthur Michael Solender, and Elsie Solender. *Id.* ¶ 4; *see id.* Ex. A. Together, Mr. Weiss and his assignees (collectively "Weiss") applied for a patent on January 25, 1990. *Id.* ¶ 7 (citing Application No. 470,343); *see id.* Ex. A.

On September 14, 1990, the Patent Office issued, at the request of the Air Force, a "secrecy order and permit for foreign filing in certain countries" pursuant to sections 181 and 184 of Title 35. *Id.* Ex. B ("Secrecy Order I"). The order prohibited the unauthorized disclosure of the invention *except* to U.S. citizens and permanent residents for legitimate business purposes, and to the patent offices of seventeen industrialized countries—Australia, Belgium, Canada, Denmark, France, Federal Republic of Germany, Greece, Italy, Japan, Luxembourg, Netherlands, Norway, Portugal, Spain, Sweden, Turkey, and the United Kingdom—for the purpose of seeking a patent. *Id.* at 2–3. With respect to seeking patents in the enumerated foreign countries, the secrecy order stated:

> The principals shall request the foreign patent office to place in secrecy the foreign patent applications corresponding to the above-identified application and shall furnish a copy of this Secrecy Order and permit with the first papers to be filed in the foreign patent office.

> The use of this permit shall constitute a waiver, unless otherwise required by the international agreements, of any claim to compensation for loss or damage due solely to the imposition of secrecy or similar treatment of the invention. Belgium, France, the Federal Republic of Germany, the Netherlands, Norway, Turkey and the United Kingdom normally require a separate document confirming such a waiver.

*Id.* at 4. Weiss did not try to patent his invention in a foreign country as allowed by Secrecy Order I. *Id.* ¶ 11.

On May 15, 1992, the Patent Office issued a notice of allowance, informing Weiss that he was entitled to a patent. *Id.* ¶ 12; *see also* 35 U.S.C. § 151 ("If it appears that applicant is entitled to a patent under the law, a written notice of allowance of the application shall be given or mailed to the applicant."). On June 25,

---

1. Although the United States brought a motion to dismiss, or in the alternative, a motion for summary judgment, this Court treats the motion as a motion for summary judgment. Neither party objected to such treatment at the motion hearing held on March 12, 2001. Mot. Hr'g Tr. at 12.

1992, the Patent Office issued a second secrecy order identical in all material respects to Secrecy Order I. Compl. Ex. C ("Secrecy Order II"). Again, Weiss did not try to patent his invention in a foreign country as allowed by Secrecy Order II. *Id.* ¶ 15.

On September 1, 1993, Weiss petitioned the Patent Office to vacate the secrecy orders,[2] *id.* ¶ 17, which the Patent Office

did on May 15, 1996, *id.* ¶ 18. On March 11, 1997, the Patent Office issued U.S. Patent No. 5,609,952 to Weiss. *Id.* Ex. A.

On November 10, 1999, Weiss wrote a letter to the Secretary of Defense "to assert a set of claims for damages as authorized by law (35 U.S.C. § 183, and if required, the related jurisdictional sections of 35 U.S.C. § 183, under procedures established by 37 C.F.R. 5.7)."[3] *Id.* Ex. D

2. The parties have not made clear the duration of each secrecy order. Weiss implies that this Court should concatenate Secrecy Orders I and II to create a continuous secrecy order lasting from September 14, 1990 until May 15, 1996. In general, "[a]n invention shall not be ordered kept secret and the publication of an application or the grant of a patent withheld for a period of more than one year" unless "an affirmative determination has been made that the national interest" requires renewal of the secrecy order for another year. 35 U.S.C. § 181. "An order in effect, or issued, during a national emergency declared by the President," however, "shall remain in effect for the duration of the national emergency and six months thereafter." *Id.* The parties have not made clear whether Secrecy Orders I and II were renewed annually or whether they were in effect during a "national emergency declared by the President."

Although the United States has been subject to a string of national emergencies stretching back to World War II, the "national emergency" exception to the Invention Secrecy Act does not appear to apply to Secrecy Orders I and II. The President declared national emergencies due to World War II on September 8, 1939, Proclamation No. 2352, 4 Fed.Reg. 3851 (1939), *reprinted in* 50 U.S.C. app. at 287 (1994), *and in* 54 Stat. 2643, and May 27, 1941, Proclamation No. 2487, 6 Fed.Reg. 2617 (1941), *reprinted in* 50 U.S.C. app. at 287 (1991), *and in* 55 Stat. 1647, both of which terminated on April 28, 1952, the same date that the Treaty of Peace with Japan concluded World War II. Proclamation No. 2974, 3 C.F.R. 158 (1949–1953), *reprinted in* 50 U.S.C. app. at 288 (1994), *and in* 66 Stat. c31 (1952). The President declared a national emergency due to the Korean War on December 16, 1950, Proclamation No. 2914, 3 C.F.R. 99 (1949–1953), *reprinted in* 50 U.S.C. app. at 287–88 (1994), *and in* 64 Stat. a454

(1950), which Congress terminated on September 14, 1978, 50 U.S.C. § 1601. *See generally* H.R.Rep. No. 6–1540 (1980) (reporting on *The Government's Classification of Private Ideas: Hearings Before the Gov't Information & Individual Rights Subcomm. of the House Comm. on Gov't Operations*, 96th Cong. [1980] ), *cited in* Gary L. Hausken, *The Value of a Secret: Compensation for Imposition of Secrecy Orders Under the Invention Secrecy Act*, 119 Mil. L.Rev. 201 (1988), *and* Sabing H. Lee, *Protecting the Private Inventor Under the Peacetime Provisions of the Invention Secrecy Act*, 12 Berkeley Tech. L.J. 345 (1997). Since enactment of the National Emergencies Act, Pub.L. No. 94–412, 90 Stat. 1255 (1976) (codified as amended 50 U.S.C. §§ 1601–1651) which requires the President annually to renew declared national emergencies, 50 U.S.C. § 1622(d), and also to specify the emergency powers that he proposes to exercise, 50 U.S.C. § 1631, the President has declared sundry national emergencies, *see, e.g.,* Continuation of Iran Emergency, 65 Fed.Reg. 68,061 (Nov. 9, 2000) (continuing national emergency declared on November 14, 1979 by Executive Order No. 12,170), but apparently no president has invoked the power under the Invention Secrecy Act to allow for automatic extension of a secrecy order during the course of a national emergency, as would now be required by section 1631 of Title 50.

3. The Code of Federal Regulations merely states that any request for compensation should not be made to the Patent Office but rather directly to the department or agency that caused the secrecy order to be issued. 37 C.F.R. § 5.2. In 1997, this provision was moved from section 5.7 to section 5.2 of Title 37. Changes to Patent Practice and Procedure, 62 Fed.Reg. 53,132, 53,203–04 (Oct. 10, 1997).

at 1. The letter asserted the following claims:

[1] A statutory claim for damages because of the fact of the issuance of [Secrecy Orders I and II].

. . . .

[2] A claim for damages [as a result of Secrecy Order I] because of impermissible conduct by the . . . Air Force, which, without statutory authority, frustrate[d] the right to obtain compensation for the effects of imposition of an order of secrecy by conditioning the right to a foreign patent filing license for Europe or Canada upon the pre-emptive waiver of any future claim for damages caused by the imposition of secrecy.

. . . .

[3] A claim for damages [as a result of Secrecy Order II] from the use and exploitation of the invention during the secrecy period by the United States Department of Defense . . . . The damages in question include money damages for lost profits, calculated by reference to imputed royalties, at rates granted as a remedy in cases of adjudicated patent infringement by private parties in the United States District Courts.

*Id.* at 3–4. On January 4, 2000, the Air Force wrote a letter to Weiss acknowledging receipt of his letter of November 10, 1999. *See* Def.'s Mem. Ex. A at 1.

On January 14, 2000, Weiss wrote a letter to the Air Force clarifying that he was seeking compensation, in part, "because of the imposition of two secrecy orders." *Id.* In response to earlier ques-

tions by the Air Force, Weiss stated in his letter that he never licensed the patent, litigated the patent, or sent any notices of infringement to anyone else. *Id.* at 2.

On March 24, 2000, the Air Force informed Weiss that "the claim for compensation for damages allegedly caused by or arising from the alleged appropriation of patent rights through the imposition of a secrecy order . . . is denied." Compl. Ex. E at 1.

■ On December 15, 2000, Weiss filed a complaint in this Court against the United States pursuant to section 183 of Title 35 seeking compensation for the imposition of Secrecy Orders I and II.[4] On February 13, 2001, the United States moved to dismiss the complaint or, in the alternative, for summary judgment. On February 27, 2001, Weiss moved for partial summary judgment with respect to the issue of liability.

## B. Procedural Posture

This Court invited the parties to convert their motions to a motion for judgment on the written record, which would allow the Court to resolve factual disputes, *Cont'l Grain Co. v. P.R. Mar. Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992), but Weiss politely declined this invitation. Thus, this Court will treat the motions as cross-motions for summary judgment, a posture that does not permit fact-finding and allows judgment only if there is no dispute as to any genuine issue of material fact. Fed.R.Civ.P. 56(c).

**4.** Weiss did not include in his complaint the other two claims that he had listed in his original demand to the Air Force, namely damages for the "impermissible conduct" by the Air Force and damages for the use of the invention by the United States. Upon final judgment on the merits in this case, Weiss will be barred from litigating these two claims. *See, e.g., In re Iannochino,* 242 F.3d

36, 43 (1st Cir.2001) (setting forth requirements of res judicata); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 37 (1st Cir.1998); *see also Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,* 170 F.3d 1373, 1381 n. 4 (Fed.Cir.1999) (noting that the law of the circuit in which the district court sits governs the question of res judicata).

## II. SUBJECT–MATTER JURISDICTION

■ The parties agree that this Court has jurisdiction over the case, but the parties' consent cannot confer subject-matter jurisdiction. Rather, this Court must satisfy itself that it has subject-matter jurisdiction. *E.g., Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

Section 183 of Title 35 provides:

[1] An applicant, his successors, assigns, or legal representatives, whose patent is withheld as herein provided, shall have the right, beginning at the date the applicant is notified that, except for such order, his application is otherwise in condition for allowance, or February 1, 1952, whichever is later, and ending six years after a patent is issued thereon, to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure. [2] The right to compensation for use shall begin on the date of the first use of the invention by the Government. [3] The head of the department or agency is authorized, upon the presentation of a claim, to enter into an agreement with the applicant, his successors, assigns, or legal representatives, in full settlement for the damage and/or use. [4] This settlement agreement shall be conclusive for all purposes notwithstanding any other provision of law to the contrary. [5] If full settlement of the claim cannot be effected, the head of the department or agency may award and pay to such applicant, his successors, assigns, or legal representatives, a sum not exceeding 75 per centum of the sum which the head of the department or agency considers just compensation for the damage and/or use. [6] A claimant may bring suit against the United States in the United States Claims Court or in the District Court of the United States for the district in which such claimant is a resident for an amount which when added to the award shall constitute just compensation for the damage and/or use of the invention by the Government. [7] The owner of any patent issued upon an application that was subject to a secrecy order issued pursuant to section 181 of this title, who did not apply for compensation as above provided, shall have the right, after the date of issuance of such patent, to bring suit in the United States Claims Court for just compensation for the damage caused by reason of the order of secrecy and/or use by the Government of the invention resulting from his disclosure. [8] The right to compensation for use shall begin on the date of the first use of the invention by the Government. [9] In a suit under the provisions of this section the United States may avail itself of all defenses it may plead in an action under section 1498 of title 28. [10] This section shall not confer a right of action on anyone or his successors, assigns, or legal representatives who, while in the full-time employment or service of the United States, discovered, invented, or developed the invention on which the claim is based.

35 U.S.C. § 183. Section 183 sets forth two routes to compensation: an administrative route (that can be supplemented by judicial action), described in sentences one through six, and a judicial route, described in sentences seven and eight. Under sentence six, either the United States Claims Court or a district court may provide additional compensation to those who chose the administrative route. Under sentence seven, only the United States Claims Court may provide compensation to those who

chose the judicial route. Thus, the relevant language for purposes of jurisdiction is:

> [1] An *applicant* ..., whose patent is withheld as herein provided, shall have the right, beginning at the date the applicant is notified that, except for such order, his application is otherwise in condition for allowance, ... *and ending six years after a patent is issued thereon,* to apply to the head of any department or agency who caused the order to be issued for compensation for the damage caused by the order of secrecy and/or for the use of the invention by the Government, resulting from his disclosure.... [5] If full settlement of the claim cannot be effected, the head of the department or agency may award and pay to such applicant ... a sum not exceeding 75 per centum of the sum which the head of the department or agency considers just compensation for the damage and/or use. [6] A *claimant* may bring suit against the United States in the United States Claims Court or in the District Court of the United States for the district in which such claimant is a resident for an amount which when added to the award shall constitute just compensation for the damage and/or use of the invention by the Government. [7] The *owner of any patent* issued upon an application that was subject to a secrecy order issued pursuant to section 181 of this title, *who did not apply for compensation* as above provided, shall have the right, after the date of issuance of such patent, to bring suit in the United States Claims Court for just compensation for the damage caused by reason of the order of secrecy and/or use by the Government *of the invention resulting from his disclosure.*

*Id.* (emphasis added).

█ Weiss asserts a cause of action in this Court pursuant to sentence six, which allows a *claimant* to sue "for an amount which when added to the award [allowed in sentence five] shall constitute just compensation." *Id.* As described in sentences one and five, an applicant may present a claim for compensation to the head of the department or agency that caused the secrecy order to be issued. Weiss, however, was not an *applicant* when he presented his claim to the Air Force; to the contrary, he deliberately waited until he was a *patent owner,* and pursuant to sentence seven, a patent owner who did not seek compensation as provided in sentences one through five can only seek compensation in the United States Claims Court.

The distinction between applicants and patent owners, and thus the distinction between those who may sue in district court and those who may not, would be clear but for the clause in sentence one that allows an "applicant" to pursue the administrative route up to six years after his patent issues. In other words, sentence one creates a tension between the ordinary meaning of "applicant" and "patent owner" by implying that a person remains an "applicant" even after he becomes a "patent owner." Two resolutions of this tension are possible: (i) the word "applicant" should be interpreted to include a person who has owned a patent for not more than six years; or (ii) the phrase "and ending six years after a patent is issued thereon" should be construed as providing a statute of limitations for suits under sentence seven (the judicial route) rather than sentence one (the administrative route). The proper resolution of this tension determines whether Weiss remained an applicant for purposes of sentence one, even though he did not pursue the administrative route until he became a patent owner, and thus whether this Court has jurisdiction to hear his claim.

### A. Should the Phrase "and ending six years after a patent is issued thereon" Be Construed as a Limitation on Sentence Seven Rather than Sentence One?

#### 1. Statutory Construction of "Applicant" and "Patent Owner"

■ If the phrase "and ending six years after a patent is issued thereon" were construed as a limitation on sentence seven rather than sentence one, then the plain meaning of the words "applicant" and "patent owner" would be preserved. Indeed, the words "applicant" and "patent owner" should receive mutually exclusive definitions given their consistent use throughout the Patent Act.

When Congress enacted the current Patent Act in 1952, Act of July 19, 1952, Pub.L. No. 82–593, 66 Stat. 792 (codified as amended at 35 U.S.C. §§ 1–376), it used the word "applicant" in its ordinary sense. Chapter 11 of the Act, titled "Application for Patent," consistently uses the word "applicant" to refer to a person in the process of applying for a patent. *See, e.g.,* ch. 11 § 112, 66 Stat. at 798 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."); ch. 11 § 114, 66 Stat. at 799 ("The Commissioner may require the applicant to furnish a model of convenient size to exhibit advantageously the several parts of his invention."); ch. 11 § 115, 66 Stat. at 799 ("The applicant shall make oath that he believes himself to be the original and first inventor ...."). Other chapters of the Patent Act also use the word "applicant" in its ordinary sense. *See, e.g.,* ch. 12 § 131, 66 Stat. at 801 ("The Commissioner shall cause an examination to be made of the application ... and if on such examination it appears that the applicant is entitled to a patent under the law, the Commissioner shall issue a patent therefor."); ch. 14 § 151, 66 Stat. 803 ("The patent shall issue ... after written notice to the applicant of allowance of the application....").

The Patent Act of 1952 prefers the word "patentee" to the words "patent owner," but the Act uses these words synonymously. *Compare* ch. 10 § 100(d), 66 Stat. at 797 (defining "patentee"), *and* ch. 29 § 281, 66 Stat. at 812 ("A patentee shall have remedy by civil action for infringement of his patent."), *with* ch. 28 § 271(d), 66 Stat. at 811 ("No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent ...."). The Act also uses the word "patentee" in contrast to the word "applicant." *See, e.g.,* ch. 12 § 135, 66 Stat. 801 ("Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be."); ch. 25 § 253, 66 Stat. at 809 ("[A]ny patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.").

The 1999 revision to the Patent Act, Intellectual Property and Communications Omnibus Reform Act of 1999, Pub.L. No. 106–113, 113 Stat. 1501A–521 (codified at 35 U.S.C.), also uses the words "patent owner" in contrast to the word "applicant," *see, e.g.,* Tit. IV, subtit. F § 4605, 113 Stat. at 1501A–570–71 (amending 35 U.S.C. § 134 to distinguish among applicants, patent owners, and third parties with respect to the right to appeal); *id.* at 1501A–571 (amending 35 U.S.C. § 141 to distinguish between applicants and patent owners with respect to the right to appeal).

In short, the intent of Congress, as expressed by its consistency throughout the Patent Act, is that the words "applicant" and "patent owner" should receive mutually exclusive definitions.

### 2. Logic and Legislative History

Logic and legislative history support reading the phrase "and ending six years after a patent is issued thereon" as a limitation on sentence seven rather than sentence one. Indeed, the legislative history specifically states that Congress intended to create a six-year statute of limitations in section 183 to mirror the general six-year statute of limitations on claims within the jurisdiction of the United States Claims Court, 28 U.S.C. § 2501. *See* S.Rep. No. 82–1001 (1951) (repeating in substance H.R.Rep. No. 82–1028 [1951]), *reprinted in* 1952 U.S.C.C.A.N. 1321;[5] *Patent Disclosure: Hearings on H.R. 4687 Before the House Subcomm. No. 3, Comm. on the Judiciary*, 82d Cong. 19 (1951) [hereinafter *1951 Hearings*]. Although the Senate Report does not specify whether the statute of limitations was meant for the administrative route or the judicial route, logic supports applying the limitation to the judicial route:

> We find the reference in the [Senate] Report to the "6–year statute of limita-

tions" prescribed in section 183 to be puzzling. The only reference in section 183 to "six years" refers to part of the period in which an applicant may seek administrative relief (see sentence 1). Since [a Notice of Allowance ("NOA")] must precede the date of issuance of a patent, the period "prescribed" would inevitably result in a period greater than 6 years (i.e., from the date of the NOA to 6 years after the patent issues). Furthermore, the phrase "statute of limitations" conventionally refers to the period in which to file a judicial, not an administrative, claim.

*Am. Tel. & Tel. Co. v. United States*, 231 Ct.Cl. 360, 685 F.2d 1361, 1364 n. 7 (1982). If the phrase "and ending six years after a patent is issued thereon" were construed as a limitation on sentence seven rather than sentence one, then the statute would make perfect sense. An "applicant" could pursue the administrative route at any time after the notice of allowance but before the patent issued, and a "patent owner" could pursue the judicial route at any time after the patent issued but before the expiration of six years. Not only would this interpretation remove the tension in sentence one but it would also provide a statute of limitations for sentence seven,

---

**5.** With respect to the language that is now found in section 183, the Senate Report states:

> Section 3 differs from Public Law [76–]700 with respect to compensation payable to the owner of an application under a secrecy order like Public Law 700, however, it provides for compensation for damages caused by the order of secrecy for governmental use. *Section 3 prescribes a 6–year statute of limitations.* It does not require tender of the invention to the Government precedent to recover of compensation, nor does it defer presentation of a claim for compensation until after a patent issues on the application. It authorizes the head of a department who caused the secrecy order to be issued to make full settlement or, if that cannot be effected, a settlement not exceeding 75 percent of a just compensation. The owner who fails to secure a satisfactory award or who does not apply for compensation may bring suit in the Court of Claims. *The 6–year statute of limitations is incorporated to preclude the collection of old claims from the Government, and conforms with the statute of limitations on suits in the Court of Claims.* Under Public Law 700, no statute of limitations was provided for the collection of outstanding claims for an unreasonable length of time.

S. Rep. No. 82–1028, *reprinted in* 1952 U.S.C.C.A.N. at 1323 (emphasis added).

which otherwise would have no express statute of limitations. *See id.* at 1366 (applying general six-year statute of limitations of United States Claims Court to actions under section 183).

## B. The Word "applicant" Should Be Construed to Include Patent Owners of Not More than Six Years

The life of the law is not logic, however; so, this Court construes the word "applicant" in sentence one of section 183 to include a "patent owner" of not more than six years, such as Weiss. The history of section 183 requires this result, even though it would make an English teacher blush.

The Invention Secrecy Act of 1951, Pub.L. No. 82–256, 66 Stat. 3 (1952), from which the text of section 183 was taken, *compare* § 3, 66 Stat. at 4–5, *with* Act of July 19, 1952, Pub.L. No. 82–593, § 183, 66 Stat. 792, 806–07, was not enacted without precedent; it was the Cold War successor to similar legislation enacted for World War I and World War II now referred to as the Voluntary Tender Act, *see Fulmer v. United States,* 83 F.Supp. 137 (N.D.Ala. 1949) (considering jurisdiction under the Voluntary Tender Act).

The World War I version of the Voluntary Tender Act provided:

When an *applicant* whose patent is withheld as herein provided and who faithfully obeys the order of the Commissioner of Patents above referred to shall tender his invention to the Government of the United States for its use, *he shall, if and when he ultimately received a patent, have the right to sue* for compensation in the Court of Claims, such right to compensation to begin from the date of the use of the invention by the Government.

Act of Oct. 6, 1917, ch. 95, 40 Stat. 394, 395 (emphasis added) (repealed 1952).

The World War II version of the Voluntary Tender Act provided:

When an *applicant* whose patent is withheld as herein provided and who faithfully obeys the order of the Commissioner of Patents above referred to shall tender his invention to the Government of the United States for its use, *he shall, if and when he ultimately receives a patent, have the right to sue* for compensation in the Court of Claims, such right to compensation to begin from the date of the use of the invention by the Government; *Provided,* That the Secretary of War or the Secretary of the Navy or the chief officer of any established defense agency of the United States, as the case may be, is authorized to enter into *an agreement with the said applicant in full settlement and compromise for the damage accruing to him by reason of the order of secrecy, and for the use of the invention* by the Government.

Act of July 1, 1940, ch. 501, 54 Stat. 710, 711 (first, second, and fourth emphasis added) (repealed 1952).[6]

---

6. Two amendments, neither of which is material to this case, were made to the World War II version of the Voluntary Tender Act. The first amendment, among other additions, placed restrictions on foreign patent filings, Act of Aug. 21, 1941, Pub.L. No. 77–239, 55 Stat. 657, and the second amendment extended the duration of the Voluntary Tender Act from two years, as originally provided, to "the time when the United States is at war," Act of June 16, 1942, Pub.L. No. 77–609, 56 Stat. 370. As noted above, *supra* note 2, World War II did not conclude until April 1952, and thus, Congress did not leave a gap between the Voluntary Tender Act and the Invention Secrecy Act, much to the relief of the military, *1951 Hearings* at 36 (noting that over 2,000 secrecy orders would expire upon conclusion of World War II unless Congress enacted new legislation).

As the quotations above show, the Voluntary Tender Act evolved over time and formed the basis for the Invention Secrecy Act. Despite that evolution, the word "applicant" remained. Both versions of the Voluntary Tender Act state: "[an applicant] shall, if and when he ultimately receive[s] a patent, have the right to sue ...." The use of the word "applicant" is imprecise, but it unambiguously encompasses *patent owners* who once were subject to an order of secrecy. Given the historical use of the word "applicant" in the Voluntary Tender Act, it is clear that the Invention Secrecy Act uses the word "applicant" in a manner that includes patent owners.

To the extent that the legislative history behind the drafting of the Invention Secrecy Act is relevant, it supports giving district courts jurisdiction over claims under section 183. The original drafts of the Invention Secrecy Act, which built on the text of the Voluntary Tender Act, only provided jurisdiction in the United States Claims Court. *Patent Disclosure: Hearings on H.R. 6389 Before the House Subcomm. No. 4, Comm. on the Judiciary*, 81st Cong. 2 (1950) [hereinafter *1950 Hearings*]; *1951 Hearings* at 2. The American Patent Law Association argued in favor of providing concurrent jurisdiction in the district courts. *1951 Hearings* at 18, 27. After the Senate Judiciary Committee reported the bill to the Senate, the Chairman of the Senate Judiciary Committee proposed an amendment on the floor of the Senate, which was accepted without discussion, that provided jurisdiction in the district courts in light of the "severe inconvenience on some claimants to have to come to Washington to prosecute their claims in the Court of Claims," 97 Cong. Rec. 13,670 (1951) (statement of Sen. McCarran), *cited in Robinson v. United States*, 236 F.2d 24, 28 (2d Cir. 1956) ("The legislative history of § 183 shows that Congress intended that every claimant should be able to bring suit in the District Court if he so desired."). Unfortunately the amendment granting concurrent jurisdiction in the district courts only was made with respect to the administrative route, rather than both the administrative and judicial routes, resulting in the present confusion. To the extent that Congress was trying to expand jurisdiction under section 183, however, this Court will not defeat that intent by construing sentence one against Weiss.

In summary, section 183 allows either an applicant, or a patent owner of not more than six years, to seek relief from the head of the department or agency that caused the secrecy order to be issued, and then to seek further relief from either a district court or the United States Claims Court.

## III. DISCUSSION

■ Turning to the merits, the complaint properly states a cause of action under section 183,[7] but the evidence of damages is sparse, making Weiss vulnerable to summary judgment. Section 183 permits compensation for damage caused by (i) the order of secrecy; or (ii) the use of the invention by the United States. 35 U.S.C. § 183. Weiss complains only about

7. Weiss argues also that Secrecy Orders I and II were a taking under the Fifth Amendment. Pls.' Mot. ¶ 2; *see also* Pls.' Reply at 2–3. This argument is without merit. It is settled that "the issuance of a secrecy order is not *per se* a taking and that diminution of [an] invention and inability to exploit [the] invention are compensable elements of a claim under section 183, not under the Fifth Amendment." *Constant v. United States*, 16 Cl.Ct. 629, 634–35 (1989), *aff'd*, 884 F.2d 1398, 1989 WL 90244 (Fed.Cir.1989). Thus, this Court's focus is on whether Weiss is entitled to compensation under section 183, interpreted consistently with the Fifth Amendment.

the order of secrecy; he does not complain about the use of the invention by the United States. Few cases have addressed the question of damages under the Invention Secrecy Act, so each is worth examining in some detail.

## A. Cases Addressing the Question of Damages

The first and most important case to address the question of damages arose out of a dispute between James N. Constant ("Constant") and the United States over a secrecy order on Constant's application to patent a method of encoding radar signals. Two published opinions resulted from the dispute, the first, concluding before trial that Constant stated a cause of action, *Constant v. United States*, 223 Ct.Cl. 148, 617 F.2d 239, 244 (1980) [hereinafter *Constant I* ], and the second, concluding after trial that Constant was not entitled to recover as matter of law because he failed to prove "actual damages," *Constant v. United States*, 1 Cl.Ct. 600, 609 (1982) [hereinafter *Constant II* ], *aff'd*, 714 F.2d 162 (Fed.Cir.1983).

In *Constant I*, the court rejected the argument that Constant failed to state a claim for damages caused by the imposition of the secrecy order because Constant alleged:

> (a) [he] had begun to develop his invention; (b) the subsequent intervention of the secrecy order was a significant cause of the rejection of [his] applications for loans which were necessary for that development; (c) because of the order [he] could not demonstrate to prospective users and licensees that his invention represented a superior technology in the field; (d) because of the order prospective users of his invention would not accept or could not evaluate it, and

> therefore selected the technologies of competitors, and other potential customers were influenced against [his] system; and (e) [he] invested personal funds in his hobbled and unsuccessful effort to develop, and also expended substantial attorneys fees in his attempts to have the secrecy order rescinded. These allegations are quite sufficient to withstand the Government's motion to dismiss (though the trial judge may consider it appropriate to call for further particularization and specification).

*Constant I*, 617 F.2d at 244. Although the court did not dismiss the complaint, it warned Constant that ultimately he would need to do more than speculate as to his damages:

> Some concern was expressed at the House of Representatives committee hearings on the Invention Secrecy Act of 1951, the predecessor of section 183 . . ., as to the proper proof of damages under the statute. *See, Hearings on H.R. 4687 before Subcommittee No. 3, Committee on the Judiciary*, 82d Cong., 1st Sess. 17, 18, 21, 22–23, 28, 32 (August 21, 1951). We think the consensus at the hearings was that neither the courts nor the administrative agencies would permit purely speculative damages, but that there would have to be "real concrete evidence of damage," (*Id.* at 32, Statement of P.J. Federico, Examiner–in–Chief, U.S. Patent Office), "actual damages" (*Id.* at 28, Statement of H. Brown, Chief, Patent Section, Dept. of Justice), proven damages (*Id.* at 18, 21, 23, Statement of P.A. Rose, representative of the American Patent Law Association), or "perhaps a greater degree of proof or ability to prove damages." (*Id.* at 21, Statement of Congressman Willis).

*Id.*[8]

In *Constant II*, the court held that Constant failed to establish liability at trial because he failed to prove "actual damages" resulting from the imposition of the secrecy order. The secrecy order lasted fifteen months. *Constant II*, 1 Cl.Ct. at 602. The secrecy order did not delay issuance of the patent, but it prohibited disclosure of the invention *except* to: (1) anyone cognizant of the invention prior to the date the secrecy order was imposed; (2) agents of the United States; and (3) any person specifically authorized by the United States. *Id.* at 603–04. Constant argued that the fifteen-month period of secrecy resulted in five types of damages: "(1) profits lost as a result of interference with business opportunities; (2) expenses incurred in attempts to obtain rescission of the secrecy order; (3) out-of-pocket business losses; (4) damages for interference with [his] right to compete in the [relevant] market; and (5) damages resulting from delays in filing foreign patent applications." *Id.* at 602.

With respect to the first, third, and fourth sources of damages, the court held that Constant failed to prove "actual damages" as a result of the alleged interference with business opportunities, *id.* at 606–07, and interference with the right to compete, *id.* at 609; so, he could not show business losses, *id.* at 608. Constant failed to produce any potential customers at trial, any probative evidence that anybody was prepared to accept his services, or any evidence that the secrecy order was the cause of his lost business opportunities. *Id.* at 607. The court noted that Constant never petitioned the Patent Office during the term of the secrecy order for a permit to disclose the contents of the patent application to a prospective customer. *Id.* Finally, the court held that "[t]o the extent [Constant] seeks a conjectural or nominal award for the infringement of [his] 'right to compete,' [Constant's] claim must be rejected. As this court has previously indicated, 'actual damages' must be proven as a prerequisite to recovery under the statute." *Id.* at 609. With respect to the second source of damages, the court held that the Invention Secrecy Act does not allow recovery of litigation expenses. *Id.* at 608. With respect to the fifth source of damages, the court held that, on the record before it, Constant's mere delay in filing foreign patent applications did not constitute "actual injury." *Id.* at 609.

8. Although the World War II version of the Voluntary Tender Act allowed an applicant to receive compensation for "damage accruing to him by reason of the order of secrecy," as well as for "the use of the invention by the Government," Act of July 1, 1940, ch. 501, 54 Stat. 710, 711 (repealed 1952), the original draft of the current Invention Secrecy Act only provided compensation for damages caused by *use* of the invention. *1950 Hearings* at 2. Both the Aircraft Industries Association of America, Inc. and the Department of Defense recommended redrafting the Invention Secrecy Act to allow compensation for damages caused by the order of secrecy itself. *Id.* at 9 (statement in behalf of Aircraft Industries Association of America, Inc.), 15 (statement of Captain Robillard). The Department of Defense noted that it never had received a claim for damages caused by the imposition of a secrecy order under the Voluntary Tender Act, *id.* at 19 (remarks of Captain Robillard), *1951 Hearings* at 32 (remarks of P.J. Federico, Examiner–in–Chief, U.S. Patent Office), and that determining damages in such a case would be difficult, *1950 Hearings* at 15 (statement of Captain Robillard), 19 (remarks of Captain Robillard), but it argued to Congress that "the fact we never had a claim indicates it never hurt us, but we should be willing to entertain the few that might arise, and after all it was not too good an argument that because something was difficult to do we should not try to do it," *id.* at 19 (remarks of Captain Robillard). Congress made the change, but expressed its reservations about allowing compensation for speculative damages, as noted in *Constant I.*

In *Lear Siegler, Inc. v. United States,* 225 Ct.Cl. 663 (1980), the court refused to grant a plaintiff summary judgment, even on the question of liability, based on the mere showing that the plaintiff's patent application had been subject to a secrecy order, *id.* "[B]ecause Section 183 requires plaintiff prove an injury (entitlement) and damages (quantum), and because the pleadings alone do not provide such proof, we must deny this motion ·for summary judgment either as to the whole case or as to entitlement only." *Id.*

In *McDonnell Douglas Corp. v. United States,* 229 Ct.Cl. 323, 670 F.2d 156 (1982), the court held that the United States had a contractual right to use the plaintiff's invention, but remanded for further proceedings on the question whether the plaintiff could show damages caused by the imposition of a secrecy order: "[Plaintiff's] petition does not allege any potential commercial use of the [invention]. However, if such non-government use can be established, as required by § 183, damages flowing from the secrecy order may conceivably be recovered." *Id.* at 164.

### B. Weiss's Motion for Partial Summary Judgment

■ Weiss has moved for partial summary judgment on the question of liability. As held in *Lear,* however, a claim for damages caused by an order of secrecy is an all-or-nothing proposition under section 183. *Lear,* 225 Ct.Cl. 663. The question of liability necessarily depends on the question of damages, so *partial* summary judgment in favor of Weiss must be denied.

### C. The United States's Motion for Summary Judgment

■ Weiss does not have any evidence that would tend to show actual damages. Weiss argues that he was damaged be-cause (i) the United States had an "exclusive option" to his invention, and (ii) he was prevented from exploiting his invention outside the United States. The evidence neither supports the inference that Weiss was damaged, nor provides any causal connection between the orders of secrecy and the alleged damages.

Weiss argues that the United States, by imposing Secrecy Orders I and II, "in effect, confiscate[d] the right to an *exclusive option* to license certain technology, whether or not patented. In the world of intellectual property, an option, particularly one that is exclusive within the major market, is a valuable right that is frequently purchased and sold, quite independent of any patent license agreement." Pls.' Mem. at 2. In fact, however, Secrecy Orders I and II were neither "exclusive" nor an "option."

The type of secrecy order imposed on Weiss was the least restrictive of the three types of secrecy orders issued by the Patent Office. Patent & Trademark Office, U.S. Dep't of Commerce, *Manual of Patent Examining Procedure* § 120, at 100–12 to 100–13 (7th ed., rev.2000). According to the Patent Office:

> The first [type of] Secrecy Order [ (Secrecy Order and Permit for Foreign Filing in Certain Countries) ] is intended to permit the widest utilization of the technical data in the patent application while still controlling any publication or disclosure which would result in unlawful exportation. This type of Secrecy Order is based on the applicable export controls in either the Commodity Control List (CCL) or the Munitions Lists of the International Traffic in Arms Regulation (ITAR), and identifies the countries where corresponding patent applications may be filed. Countries with which the United States has reciprocal security agreements are: Austra-

lia, Belgium, Canada, Denmark, France, Germany, Greece, Italy, Japan, Luxembourg, Netherlands, Norway, Portugal, Spain, Sweden, Turkey and the United Kingdom.

*Id.; accord* Revision of the Scope of the Secrecy Order for Defense Agency Use, 51 Fed.Reg. 32,938, 32,938 (Sept. 17, 1986). As explained in both Secrecy Orders I and II, Weiss was free to disclose his invention to United States citizens and permanent residents for legitimate business purposes, and to the patent offices of the seventeen countries listed above for the purpose of filing and prosecuting a foreign patent. In short, Secrecy Orders I and II were not particularly "exclusive."

Nor were Secrecy Orders I and II an "option." The United States, as sovereign, always maintains the option of taking private property, as long as it provides just compensation. The Invention Secrecy Act neither enhances nor diminishes the sovereign's power to take private property; rather, it specifies how such power will be exercised. Weiss's option argument boils down to the claim that he was damaged by the mere *existence* of sovereign power, which is nonsense. The focus of this Court's inquiry is not what the sovereign could have done, but what Weiss would have done but for the secrecy order. A secrecy order standing alone, whether characterized as an exclusive option or not, does not give rise to damages. Something more must be shown.

Weiss also argues that the order of secrecy prevented him from exploiting his invention outside the United States.[9] The argument has more promise than the "exclusive option" argument because it focuses on the foreign market, where Secrecy Orders I and II actually had some bite. In particular, Weiss argues that if he "sought patent protection in any foreign country, [he] would have to (1) restrict [himself] to certain 'friendly' venues (essentially, the member countries of the North Atlantic Treaty Organization), and (2) abandon any claim against the United States because of the imposition of the Secrecy Orders." Pls.' Mem. at 14–15. The first argument starts down the road to compensation, but never reaches its destination; the second argument misunderstands the orders of secrecy.

Weiss did not attempt to patent his invention in any foreign country, even though the secrecy orders allowed him to do so. Weiss explains his inaction by pointing to the text of Secrecy Orders I

---

9. Congress anticipated, and did not look kindly upon, Weiss's precise argument when it drafted the Invention Secrecy Act:

> Mr. Ramsay [ (Representative from West Virginia) ]. Do you not also think that if we permit an action, or permit recovery because of the fact that [an inventor under an order of secrecy] could not get a patent, for failure to file, say, in England or in Germany or other countries, he could claim damages for failure to file in every country, claim that he was entitled to damages, could he not?
>
> Mr. Rose [ (American Patent Law Association) ]. I doubt—
>
> Mr. Willis [ (Representative from Louisiana) ]. It would be a matter of proof.

> Mr. Ramsay. Regardless of how it is disproved, nevertheless there would be no way of disproving it. He could assert that he had the right to damages....
>
> Mr. Rose (interposing). Well, I do not believe that any one would go quite that far.
>
> Mr. Ramsay. But they might.
>
> ....
>
> Mr. Willis. That would be speculative damages.
>
> Mr. Ramsay. Yes; that is what I am afraid of in this connection, speculative damages.

*1951 Hearings* at 21–22. This colloquy and others like it were cited by *Constant I* in support of the rule requiring a plaintiff to show actual damages under section 183. *Constant I,* 617 F.2d at 244.

and II, which he thought required him to waive his right to compensation under section 183 in exchange for the right to file a patent outside the United States. The secrecy orders stated:

> The principals shall request the foreign patent office to place in secrecy the foreign patent applications corresponding to the above-identified application and shall furnish a copy of this Secrecy Order and permit with the first papers to be filed in the foreign patent office.
>
> *The use of this permit shall constitute a waiver,* unless otherwise required by the international agreements, *of any claim to compensation* for loss or damage due solely to the imposition of secrecy or similar treatment of the invention. Belgium, France, the Federal Republic of Germany, the Netherlands, Norway, Turkey and the United Kingdom normally require a separate document confirming such a waiver.

Compl. Ex. B at 4 (emphasis added). The parties now agree that the "waiver" mentioned in the secrecy orders refers to a claim against one of the enumerated foreign countries, not a claim under section 183. In other words, if Weiss were damaged outside the United States because of a secrecy order, his claim still would be against the United States, not any of the enumerated foreign countries. Indeed, the regulation implementing the type of secrecy order that Weiss received makes clear that the "waiver" is for the benefit of the foreign countries, not the United States. *See* Revision of the Scope of the Secrecy Order for Defense Agency Use, 51 Fed.Reg. at 32,939 ("The foreign government may require a waiver in writing of any claim to compensation for loss or damage due solely to the imposition of secrecy on the invention."). Because this Court is faced with cross-motions for summary judgment, rather than a motion for judg-

ment on the written record, the Court must accept the not-unreasonable inference presented by Weiss that he did not file patent applications in foreign countries because of the "waiver" language in Secrecy Orders I and II. Affording Weiss this inference, however, does nothing to help his claim because he fails to show how he relied to his *detriment. Cf. Constant II,* 1 Cl.Ct. at 609 (holding that there was insufficient evidence to support finding that plaintiff was damaged by secrecy order that completely prohibited foreign patent applications).

Weiss has produced evidence of a bright idea, for which he received a patent, but he has not produced evidence of a *valuable* idea. There is no evidence that he ever licensed his patent or exercised his right to exclude. There is no evidence that anyone, including Weiss, ever practiced or will practice the invention. There is no evidence of any actual or potential customers, domestic or foreign, either today or at the time of the secrecy orders. Weiss provides a press release and a newspaper article as evidence that his invention has value, Pls.' Mem. Exs. 1, 2, but these merely confirm a hope for value, not the existence of value.

Not only does Weiss fail to provide any evidence that would tend to show damages, he also fails to provide a causal connection between the secrecy orders and the alleged damages. *See Constant II,* 1 Cl.Ct. at 607 (questioning causal connection between order of secrecy and plaintiff's business failures). No evidence supports the argument that but for the secrecy orders, Weiss would have exploited his invention. In the end, Weiss is left with the argument that Secrecy Orders I and II were an interference with the right to compete. *Constant II* rejected this very argument, and so must this Court, absent evidence of actual damages. *Constant II,* 1 Cl.Ct. at 609.

■ Weiss has asked for discovery pursuant to Federal Rule of Civil Procedure 56(f) that would support his theory that Secrecy Orders I and II caused him actual damages. Weiss filed an affidavit, which states:

4. The memorandum submitted herewith in opposition to the [Government's] motion characterizes the Government's action as in effect expropriating an option on an exclusive license, and identifies four factors to be considered in the evaluation of a proposed option agreement. In the present context, these would generally include: (1) the nature of the development, its direct commercial importance, and its potential indirect impact upon related business areas; (2) the duration of the option; (3) the amount of money spent by the U.S. Government, directly through the Air Force or other departments, and indirectly through military contractors, in the analysis of the invention; and (4) the amount of engineering effort invested by the Government during the secrecy period in determining whether improvements or changes to the invention would enhance its value.

5. The third and fourth elements set forth above cannot be obtained other than very indirectly and with great effort, if at all, without access through discovery to Governmental records.

6. Accordingly, a reasonable amount of time is requested, if the referenced information is deemed by the Court to be outcome-determinative, to conduct appropriately targeted discovery of the Government.

Pls.' Mem. Ex. 4, at 2. In general this Court would not hesitate to afford a party every opportunity to put its best case forward, but the affidavit above does not permit such indulgence. Weiss does not complain that the United States used the invention, but only that the imposition of the secrecy order caused him damage. If the question of infringement were before this Court, "targeted discovery of the Government" might be appropriate. Instead, the Court is faced only with the question of damages caused by the order of secrecy, the answer to which will not be found in the United States's files. To the contrary, Weiss should know where to find evidence of what he would have done, but was prevented from doing, as a result of the secrecy order. Weiss does not propose any plan for reducing his speculation into evidence of actual damages. In the absence of a road map to evidence that would tend to show actual damages, the Court need not prolong the inevitable. *E.g., Mass. Sch. of Law*, 142 F.3d at 43–45; *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 35 (1st Cir.1995).

## IV. CONCLUSION

Accordingly, the United States' motion for summary judgment [Docket No. 3] is ALLOWED and Weiss's motion for partial summary judgment [Docket No. 5] is DENIED. Judgment shall enter for the United States.